## Revocation of License of Americus Hose Co., Inc.

*Leonard R. Apfelbaum,* for appellant.
*Patrick M. McHugh,* for Commonwealth.

KREHEL, *P.J.,* December 31, 1980—Despite the caption, this is an appeal by the Americus Hose Company, Inc., a private, nonprofit organization, not from a revocation or suspension, but from the imposition of fines. Despite our use of the word "determination," this is the court's "opinion" in disposing of the matter before it.

On February 21, 1979, and June 25, 1980, the Pennsylvania Liquor Control Board issued "citations" setting forth that the board was in possession of facts which led it to believe that the licensee, Americus Hose Company, Inc., had violated provisions of the Liquor Code of April 12, 1951, P.L. 90, as amended, 47 P.S. § 1-101 et seq., and the rules and regulations adopted pursuant thereto, more specifically set forth as follows:

"1. You, by your servants, agents or employes, maintained gambling devices and/or paraphernalia on the licensed premises, on or about January 10, 1979, and on divers other occasions within the past year. (Citation No. 378, 1979);

"2. You, by your servants, agents or employes permitted gambling devices, paraphernalia and/or lotteries on the licensed premises, on or about June 12, 1980, and on divers other occasions within the past year. (Citation No. 1567, 1980); and

"3. You, by your servants, agents or employes offered and/or gave liquor as a prize on a gambling device, on or about June 12, 1980, and on divers other occasions within the past year. (Citation No. 1567, 1980)."

Hearings were held on both offenses before an examiner of the Pennsylvania Liquor Control Board on September 5, 1980, and on October 21, 1980, the board issued opinions and orders, imposing a fine of $300 and $350 respectively.

An appeal was filed on behalf of the licensee with the Court of Common Pleas of Northumberland County on October 30, 1980, and a hearing was held on December 29, 1980.

Certified copies of the transcript of testimony before the examiner and of the "citations," opinion, and order of fines were entered and admitted as part of the record. Additionally, a certified copy of an opinion by Judge R. Lee Ziegler, Specially Presiding, in the Court of Common Pleas of Northumberland County, in the case of Wida v. Rosini, 14 D.&C. 3d 504 (1979), was admitted without objection in its decision and determination.

The Wida case was brought by Michael R. Wida, individually, and the Americus Hose Co., Inc., by Michael R. Wida, President, against James J. Rosini, District Attorney of Northumberland County. The action was in equity for an injunction against the district attorney from the prosecution of plaintiffs for violations of sections 5512 and 5513, the gambling and lottery provisions, of the Crimes Code.

The question presented in Wida was whether the policy of enforcement of the aforementioned gambling provisions of the Crimes Code, only upon the basis of complaints, constitutes illegal discriminatory enforcement of the gambling laws with respect to activities of nonprofit organizations, whose activities are not subject to criminal prosecution, in the absence of such complaints.

It had been stipulated that numerous nonprofit civic organizations in Northumberland County

utilize fund-raising techniques and devices, proscribed by sections 5512 and 5513 of the Crimes Code, 18 Pa.C.S.A. §§5512 and 5513. The district attorney further stipulated that due to the numerous violations, the nature of the organizations committing same, and the public service, charitable and other generally laudable purposes for which the proceeds are utilized, prosecution of such violations is pursued only in those cases where complaints are made.

In further explanation of the district attorney's position, Judge Ziegler noted that "[It] was agreed by stipulation that the District Attorney and law enforcement personnel prosecute all violations of the gambling laws by non-profit organizations where a complaint is filed concerning the activity. Therefore, we do not have before us the question of the validity of a scheme of enforcement wherein some complaints are prosecuted, and others ignored, or are otherwise not acted upon."

Troubled by the fact that prosecution of these offenses commenced not upon the exercise of prosecutorial discretion, but only upon the receipt of a complaint, Judge Ziegler enjoined further criminal prosecution against Wida and Americus Hose Company as to the particular facts and prosecution.

During the hearing of December 29, 1980 the Commonwealth's counsel offered the case of V.J.R. Bar Corp. v. Liquor Control Bd., 480 Pa. 322, 390 A. 2d 163 (1978), whose majority opinion emphasized that the Liquor Control Board could impose sanctions upon finding that licensees permitted gambling to occur on its premises, even though criminal charges against the manager and two other employes of the licensee, based on the same activity, had been dismissed. The PLCB imposed its

sanctions against the license holder where the underlying conduct (gambling) did not produce any criminal charges or where criminal charges on the same conduct had not resulted in conviction.

Let us first point out that the V.J.R. Bar Corporaton case concerned a private restaurant liquor license, not a nonprofit corporation such as Americus Hose Company, Inc., appellant herein.

Next, let us look at the resounding dissenting opinion of Justice Manderino in the V.J.R. Bar Corporation case, at p. 327, whose opening salvos are:

"Under the guise of liberally construing the Liquor Code and protecting the 'public welfare, health, peace and morals' of the citizens of this Commonwealth, the majority has empowered the Liquor Control Board to independently impose punishment for the presumed commission of crimes not even related to the sale or consumption of alcohol. I must dissent.

"The majority correctly states that the Board is authorized by the Liquor Code to impose sanctions for violations of law relating to liquor or 'any other sufficient cause,' 47 P.S. §4-471 (Supp. 1977-78), and that the additional phrase 'any other sufficient cause' indicates that the Board's disciplinary powers are not limited to direct violations of the liquor laws. This does not mean, however, that the Board has unbridled discretion to discipline licensees whenever, in the Board's view, criminal activity took place on a licensee's premises. The majority today gives the Board such discretion by interpreting the 'other sufficient cause' provision to include a charge of gambling on the premises, even though criminal charges against the licensee were dismissed by a judicial tribunal."

Justice Manderino then refers to "a dazzling array of precedents to support this novel and dangerous rule of law" offered by the majority stating that they overlook Pittaulis Liquor License Case, 444 Pa. 243, 282 A. 2d 388 (1971).

In accepting Justice Manderino's position, and the rule of law in the Pittaulis case, the PLCB is reminded to mind its P's and Q's.

In Pittaulis Liquor License Case, supra, the Pennsylvania Supreme Court found that the function of the board lay in the regulation of the sale of alcoholic beverages, not in the adjudication of collateral issues, and emphasized that members of the board are not even necessarily trained in the law.

We hold that the board exceeded the scope of its authority by levying the fines against Americus not only after the criminal charges had been dismissed, but in contravention to Judge Zeigler's injunction.

We suggest that the PLCB, its "enforcement agents," and their State Police "vice squad" allies, stick to their gamboling with pints and quarts for now, liters and meters later, but that they don't insert themselves into the areas or arenas of gambling, as collateral conduct in the nonprofit organization licensees. Let us await the chuffing of the legislative train. Laws are sometimes established by judicial edict, rooted in common law common sense, and reasserted in precedents, reiterated by our appellate courts, or later codified by our representatives in our bicameral legislature.

Looking at our immediate concern in this Americus appeal, some conclusions settle from the review, the research, and the pondering.

If these two alleged "citations" from the Liquor Control Board are not "criminal charges," although brought before this court with the aid of the State

Police "vice squad" for enforcement, then we ought to consider them as some "happenings" to which "non-criminal administrative defaults" are applied, in the form of $300 and $350 "designated cash sums."

Taking the next step, if this be so, then perhaps the counterforce should be in the form of aid from a "virtue squad" made up of black-robed judges.

Who else is there to protect nonprofit organizations in our society? Trying to distinguish "good" gambling from "bad" gambling is like the early 1950's period of asking whether you wanted to be killed by a "dirty" H-bomb, or a "clean" one.

The Commonwealth cannot have it both ways: (1) that these are not "criminal charges," and, therefore, the Judge Ziegler injunction does not apply; and the other negative, (2) these are not "criminal charges," but another species as of yet unlabeled "citations" carrying with them "cash defaults" in sums of $300 and $350.

The legislature has not made such a distinction, so that heads, you lose, and tails, you lose.

And, in the absence of legislative authority for such unique interpretations by the Liquor Control Board, "enforcement officers," and their State Police "vice squad" allies, the effort here to circumvent the Judge Ziegler injunction must fall between two stools. Right onto the social room floor of the Americus Hose Company.

In our concluding remarks, after testimony was taken, and summary statements of counsel were heard, this court offered to wrap up the loose ends of the one hour hearing. These follow briefly:

Initial reference was made to then-State Senator Frank W. Ruth's remarks in the mid-1950's, where

he was also a minister from Berks County, that "gambling is in the nature of man," having appeared in biblical times when the Roman soldiers cast lots for the robe of our crucified Christ.

The dismal, slippery, highway conditions on the hearing date, Monday, December 29, 1980, triggered this hearing judge's comment that "we all gambled today, playing American roulette," in driving to the courthouse at Sunbury, from different parts of Northumberland County, and beyond.

But the key element is the Judge Ziegler injunction. Its equity impact enjoins the district attorney from criminal prosecutions against Americus, a nonprofit organization. Mention was made that we would "go around the May-pole" over, and over again, if criminal charges were brought, Judge Ziegler injunction raised, charges brought, Judge Ziegler injunction raised, et cetera, et cetera, et cetera.

Anonymous telephone calls of complaints against nonprofit organizations, and the "May-pole" turns around again, and again. We asked how "are they going to be detrimental to the health, or to the peace, or to the welfare, or to the public interest????" if this type of gambling continues at Americus.

We referred to, "Tevya yelling at the sky and the Lord, 'If I were a rich man, would this foul up Your Eternal Plan,'" as an indication of the failure of the Liquor Control Board. "If Americus were allowed to conduct such activities on its licensed premises. Or, for that matter, like-minded, and like-needy, non-profit organizations???"

Then we commented on the Penn Race Track in neighboring Lebanon County, near Harrisburg,

where authorized gambling and licensed drinking take place cheek-to-jowl, closer than both ends of the horses.

Counsel for Americus asked for a clear clarion call to the PLCB and to the legislature. We offered instead "a drum beat that is loud and clear." This ruling is to be a clear signal. Appeal, if you will, but face the reality of the circumstances.

Either the courts take this bold action, in the tradition of the pioneer spirit of Northumberland County, where "justice is its boundary lines," or the shrinking violets in the legislature must act. The volunteer fire companies, especially with established ambulance services for their communities, are in jeopardy as nonprofit organizations. Their communities are in grave peril.

Considering, and reaffirming, all of the foregoing comprehensive review, we enter the following

ORDER

And now, December 31, 1980, the appeal of Americus Hose Company, Inc., is sustained, the two citations of the Pennsylvania Liquor Control Board are dismissed, and the posting of any moneys by the applicant is directed to be returned. The record court costs of these proceedings are placed on the County of Northumberland.